(No. 61665.—

ELAINE PENKAVA, Appellee, v. FRANCIS KAS-BOHM, Adm'r of the Estate of Dr. George Rezek, Deceased, *et al.* (Sandra Hon, Appellant).

*Opinion filed June 29, 1987.*

GOLDENHERSH, J., took no part.
CLARK, C.J., and MILLER, J., dissenting.

Cassiday, Schade & Gloor, of Chicago (Bradford D.

Roth and Bernice Jacobs, of counsel), for appellant.

Scott D. Hammer, of Fraterrigo, Best & Beranek, of Chicago, for appellee.

Michael C. Kominiarek and Russell P. Veldenz, of French, Rogers, Kezelis & Kominiarek, of Chicago, for Francis Kasbohn.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Elaine Penkava (Penkava), filed a complaint for medical malpractice in the circuit court of Cook County against the defendants, Francis Kasbohm, administrator of the estate of Dr. George Rezek, deceased (Dr. Rezek's estate); Northwest Hospital (Northwest); and Sandra Hon (Hon), a registered nurse employed by Northwest. The trial court granted the defendants' motions to dismiss the plaintiff's complaint on the ground that her claims were barred by the statute of limitations for medical malpractice (Ill. Rev. Stat. 1981, ch. 83, par. 22.1, now Ill. Rev. Stat. 1985, ch. 110, par. 13—212). On the plaintiff's appeal, the appellate court affirmed the dismissal of the claims against Northwest and Dr. Rezek's estate, but reversed and remanded as to the claim against Hon. (131 Ill. App. 3d 534.) Under our Rule 315 (103 Ill. 2d R. 315), we granted Hon's petition for leave to appeal but denied the petition for leave to appeal filed by Penkava.

When considering a motion to dismiss, all facts properly pleaded in a complaint will be taken as true for purposes of passing on the motion. *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 148.

On February 10, 1983, the plaintiff filed a four-count complaint: counts I and II named Northwest and Hon, a registered nurse sued as an agent and employee of Northwest; counts III and IV were against Dr. Rezek's estate. Counts I and III were drawn on the theory of

negligence; counts II and IV under the doctrine of *res ipsa loquitur*. These counts set out allegations that on May 22, 1975, at Northwest Hospital, Dr. George Rezek, with the assistance of Sandra Hon, performed a total hysterectomy on the plaintiff, and that as a result of their negligent failure to exercise due care in performing the surgery, two foreign objects, one metalic and one plastic, were permitted to remain in her body. The plaintiff did not discover presence of the objects until October 1982, when a large mass, caused by the presence of the foreign objects, developed in her abdomen.

As stated, the trial court dismissed the plaintiff's complaint. The appellate court affirmed the dismissal as to Northwest and Dr. Rezek's estate. It reversed as to Hon, holding that as a nurse, she was not within the benefit of the statute of limitations for medical malpractice, which the court said was restricted to actions against physicians and hospitals (Ill. Rev. Stat. 1981, ch. 83, par. 22.1). Section 21.1 of the statute of limitations provided in part:

> "No action for damages for injury or death against any physician, dentist or hospital duly licensed under the laws of this State *** arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death ***, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death ***." (Ill. Rev. Stat. 1981, ch. 83, par. 22.1.)

The appellate court stated that the legislature's having amended section 21.1 to include registered nurses evidenced that registered nurses were not to be "encompassed within the meaning of the term 'hospital' " under the statute. That amendment in part provides:

"No action for damages for injury or death against any physician, dentist, *registered nurse* or hospital \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 13—212.

Hon contends that the appellate court erred in interpreting section 21.1 because hospitals, considering their nature, can provide medical service and treatment only through nurses and other medical personnel. Also, to apply a different statute of limitations to a hospital employee providing patient care than the statute applied to the hospital itself would be an an illogical construction of section 21.1 because the cause of action involved has arisen from the same alleged act or acts of negligence.

The plaintiff's position is that the appellate court correctly interpreted section 21.1; and therefore, her complaint against Nurse Hon should not have been dismissed because it was timely filed within the period of the statute of limitations for personal injury (Ill. Rev. Stat. 1981, ch. 83, par. 15) when the rule relating to the discovery of negligence is applied (*Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 232). In any event, the plaintiff argues, equitable considerations require that her action against Nurse Hon not be dismissed, because the result would be that her claim for medical malpractice would have been barred even before she discovered her injury and its cause.

Before addressing these contentions of the plaintiff and Hon, we consider a motion filed by Dr. Rezek's estate to dismiss the portion of the plaintiff's brief which she has entitled "cross-appeal." There the plaintiff argues that the appellate court erred in holding for Northwest and the estate of Dr. Rezek. The plaintiff contends that she has the right to file a cross-appeal in this manner under our Rule 318(a) (87 Ill. 2d R. 318(a)). The rule provides:

"In all appeals, by whatever method, from the Appellate Court to the Supreme Court, any appellee, respond-

ent, or co-party may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice of cross-appeal or separate appeal." (87 Ill. 2d R. 318(a).)

The estate argues that, as this court has already denied the plaintiff's petition for leave to appeal from the appellate court's affirmance of the dismissal of her claims against the estate and Northwest, she cannot under our Rule 318(a) raise the same issues that this court has previously declined to review. Hon has filed a similar motion to dismiss the purported cross-appeal.

The plaintiff's claim that under Rule 318(a) she was eligible to file a cross-appeal cannot be sustained. She simply was not an "appellee, respondent or co-party" as to the estate of Dr. Rezek or Northwest and was not qualified to act under the provisions of Rule 318(a). The appellant here was neither the estate nor Northwest but rather was Hon.

The first purpose of statutory construction is, of course, to ascertain and give effect to the intention of the legislature in enacting the statute. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479.) This intention " 'is to be gathered *not only from the language used* but also from the reasons for the enactment and the purposes to be thereby attained.' " (Emphasis in original.) (*People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310.) An amendment of the statute may appropriately be considered in determining what was the legislative intent. (*People v. Rink* (1983), 97 Ill. 2d 533, 540.) Too, "where a literal enforcement of a statute would result in great injustice or absurd consequences, courts are bound to presume that such consequences were not intended and to adopt a construction which, it is reasonable to assume, was contemplated by the legislature." *People ex rel. Community High School District No. 231 v. Hupe* (1954), 2 Ill. 2d 434, 448.

This court has taken note that the legislature in the mid-1970's was confronted with a medical malpractice insurance problem resulting from an accelerated rise in premiums charged by a number of insurance companies and the withdrawal of other companies from the medical malpractice insurance market. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 317.) In response, the legislature enacted section 21.1, which limited the time within which an action for medical malpractice could be brought against a "physician or hospital." The legislature's intendment was to ensure the continued availability of medical malpractice insurance to affected persons and institutions, and thus ensure the continuation of their providing health-care services. 79 Ill. 2d 295, 317.

The plaintiff contends that the legislature, in section 21.1, intended that the reach of the statute would extend only to physicians and hospitals; registered nurses, not being named separately as a profession of health-care providers, were not to be within its coverage. In support of this position, the plaintiff relies upon the amendment of section 21.1 specifically designating registered nurses as a protected group or class of health-care providers and upon this court's decision in *Anderson v. Wagner* (1979), 79 Ill. 2d 295.

The holding in *Anderson v. Wagner* (1979), 79 Ill. 2d 295, does not support the plaintiff's position. There, this court held that section 21.1 was not unconstitutional as special legislation simply because it applied only to physicians and hospitals and not to all health-care providers. Here the question is whether the term "hospital" is to be interpreted as extending to or applying to a registered nurse employed by a hospital when acting within the scope of her employment. We hold that the legislative intendment was to extend the reach of section 21.1 to registered nurses employed by hospitals.

We agree that, as originally enacted, the scope of section 21.1 did not include registered nurses as a group or class of health-care providers who were to be independently covered within the statute. This, of course, does not mean that the term "hospital," as used in the statute, cannot and should not be construed to cover not only hospitals when sued as "hospitals," but also to cover registered nurses who are employees of a hospital and who are sued as agents of the hospital for conduct "arising out of patient care." A hospital is not merely a building or buildings with a collection of empty facilities for physical and medical treatment; it is also composed of persons, including nurses, who act on behalf of the hospital in providing treatment for patients. This court in *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, observed:

> " 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, *** and they charge patients for medical care and treatment ***. Certainly, the person who avails himself of "hospital facilities" expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility.' [Citation.]"

It is inconceivable that the legislature intended to protect only physicians, dentists and "hospitals" in a narrow, unreal sense, leaving nurses exposed to liability for later discovered malpractice. That our construction of the term hospital is correct is clear when section 21.1 is analyzed. It provides:

> "No action for damages for injury or death against any physician, dentist or *hospital *** arising out of pa-*

*tient care* \*\*\*. (Emphasis added.) Ill. Rev. Stat. 1981, ch. 83, par. 22.1.

A hospital obviously can provide medical care only through medical personnel, including nurses. If nurses of a hospital were not to have the benefit of the more restrictive statute of limitations we examine here, there would be the strange consequence of having two different periods of limitations applicable to one tort. It is clear that under the statute a hospital would be liable for not more than four years for the negligent conduct of a nurse employed by it under the doctrine of *respondeat superior*, after which the hospital would no longer be liable. The hospital's exposure to liability would be shut down after four years but the nurse's exposure to liability would continue. It would be unreasonable to conclude that the legislature intended to have such a bifurcation of the application of *respondeat superior* and exposure to tort liability.

The amendment of section 21.1 to include registered nurses (Ill. Rev. Stat. 1983, ch. 110, par. 13—212) can be readily and simply explained. The benefit of this restrictive statute of limitations originally applied only to physicians and hospitals. The statute was amended to apply to another health-care provider, the dentist, and, later, to apply to the registered nurse. It is apparent that the design of the latest amendment was to extend the benefit of the restricting statute to all registered nurses in actions arising out of patient care, as it is extended to all physicians and all dentists, rather than confining the benefit to registered nurses employed by hospitals.

The trial court properly dismissed the complaint against Nurse Hon. It was barred by the statute of limitations for medical malpractice because it was filed more than four years after the alleged negligence. (Ill. Rev. Stat. 1981, ch. 83, par. 22.1.) We are not insensitive to the distress of the plaintiff from the barring of a claim

created, she alleges, before she had knowledge of her injury. Unhappy situations as this may arise from the enactment of statutes with periods of repose. We explained the rationale underlying legislative action of this character: "[I]t is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action. *** The repose periods reflect the legislature's balancing of an individual's interest in recovery against the problems and costs perceived in medical malpractice actions and the public's interest in having available to it affordable health care [citations]." *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 422, 428.

For the reasons given, that part of the appellate court's judgment reversing the trial court's order of dismissal of defendant Hon is reversed.

*Judgment reversed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

CHIEF JUSTICE CLARK, dissenting:

The majority opinion amends by interpretation a statute which is unambiguous on its face, and hardly stands in need of tortuous explication. Moreover, the plain meaning of the statutory language, which the majority ignores, is more than sufficient to serve the statute's declared goal of reducing medical malpractice insurance costs. Since I therefore believe that the court's decision in this case violates settled principles of statutory construction, I respectfully dissent.

The statute in question provides a statute of limitations for any "action for damages for injury or death against any *** hospital duly licensed under the laws of this State." (Ill. Rev. Stat. 1981, ch. 83, par. 22.1.) The words chosen by the legislature in a statute are to be

given their plain and ordinary meaning. (*People v. Steppan* (1985), 105 Ill. 2d 310, 317.) It seems to me that, in ordinary English, an action against a hospital is an action which names a hospital, duly licensed under the laws of this State, as a defendant.

Sandra Hon is not a hospital. She is an individual. An action brought against her is not an action brought against a hospital. The fact that she is employed by or acting on the hospital's behalf should not automatically confer upon her the benefits of a statute worded so as to protect hospitals, at least not without evidence that this was in fact what the legislature intended. If such evidence is contained in the majority opinion, it has escaped me.

I agree with the majority that section 21.1 was enacted in response to a medical malpractice insurance crisis, marked by an accelerated rise in premiums charged by some insurance companies and the withdrawal of other companies from the medical malpractice insurance market. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 317.) But this crisis did not affect all health-care providers equally. As this court noted in *Anderson*, the legislature was in possession of data which indicated that, for the year 1977, "claims against physicians and surgeons constituted 59% of all claims paid by count and 73% of the total amount of all claims that were paid. Claims against hospitals composed 36% of all claims paid by count and 25% by amount. Thus physicians and hospitals together accounted for 95% of the total number of medical malpractice claims and 98% of the dollar amount of those claims paid." 79 Ill. 2d 295, 317.

Thus, the legislature was directly reacting to a crisis primarily confined to two specific classes of health-care providers—physicians and hospitals. There was no crisis among hospital employees, the vast majority of whom would not carry personal liability insurance. It is true

that hospital employees are defendants in many malpractice suits, and the institutions for which they work are impleaded for contribution or sued under *respondeat superior*. But surely the real targets of patient litigation are the "deep pockets" of institutional defendants, and not the "shallow pockets" of hospital employees. It is hospitals, not their employees, which have paid 25% of all successful malpractice claims. And it is hospitals, and not their employees, which have had difficulty obtaining insurance.

Thus, the purpose of the legislation was, obviously, to alleviate a factual medical malpractice crisis affecting hospitals, and not a fictitious crisis affecting hospital employees. This court implicitly recognized this in *Anderson*, noting that the General Assembly "drew the statute very narrowly and encompassed within the classification to whom the statute applied only those segments of the health-care providers most acutely affected by the crisis." (79 Ill. 2d 295, 319.) In fact, the court noted that the Illinois statute, like statutes in other jurisdictions, only "provides protection to a very limited group of medical personnel or facilities and *** excludes nurses and a substantial body of medical personnel and health-care facilities that could be involved in malpractice litigation." (79 Ill. 2d 295, 309.) Since hospital personnel, as opposed to the hospitals they worked for, were not "acutely affected" by the crisis, the legislature could not have intended this statute to provide protection for them. *Anderson* is our leading case on the interpretation of section 21.1. While not determinative, it is surely worthy of more consideration than the majority's curt dismissal of it. See 117 Ill. 2d at 155.

Moreover, I am unable to understand why the majority believes that an interpretation of section 21.1 which gives the word "hospital" its plain and ordinary meaning would protect hospitals only in a "narrow, unreal

sense." (117 Ill. 2d at 156.) Hospitals would be protected in a very broad, real sense—after four years they and their insurers would be safe from any claims brought upon any theory, whether arising out of the hospital's own negligence (see *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332), or out of the hospital's responsibility for the torts of its employees under the doctrine of *respondeat superior*. The fact that its employees would remain responsible for their own torts beyond the four-year period would have no effect on a hospital or its insurers.

Finally, I note that the majority has not made clear whether it holds that the statute applies to all employees of hospitals, or only to registered nurses employed by hospitals. If it holds that the statute only protects registered nurses employed by hospitals, it is difficult to understand why the legislature later amended the statute to specifically include registered nurses. (See Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) Since nurses, unlike physicians, are usually hospital employees, the addition of the words "registered nurses" would hardly have changed the law at all if the legislature had truly meant to include registered nurses employed by hospitals in the original statute. A material change in a statute made by an amendatory act is presumed to change the original statute. (See *In re Cohn* (1982), 93 Ill. 2d 190.) While the presumption may be rebutted by evidence that the original statute was ambiguous, and the legislature intended the subsequent amendment as a clarification (see *People v. Bratcher* (1976), 63 Ill. 2d 534), there is no evidence here that the word "hospital" was ambiguous, or that the addition of the phrase "registered nurse" was intended to clarify its meaning.

For the foregoing reasons, I respectfully dissent.

JUSTICE MILLER joins in this dissent.