STEVEN SOLICH et al., Plaintiffs-Appellees, v. GEORGE AND ANNA PORTES CANCER PREVENTION CENTER OF CHICAGO, INC., et al., Defendants-Appellants.—GEORGE AND ANNA PORTES CANCER PREVENTION CENTER OF CHICAGO, INC., Plaintiff and Cross-Appellee, v. UNITED STATES STEEL CORPORATION, Defendant and Cross-Appellant.

First District (4th Division)   No. 1—91—0323

Opinion filed November 25, 1992.

McMORROW, J., dissenting.

French, Kezelis & Kominiarek, P.C., of Chicago (James M. Hofert, Russell P. Veldenz, and Daniel C. Hofert, of counsel), for appellant George and Anna Portes Cancer Prevention Center of Chicago, Inc.

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (John K. Hughes, Luanne Ellison, and Jonathan A. Rothstein, of counsel), for appellant United States Steel Corporation.

Robert B. Patterson and Danielle M. Jaeschke, both of Drumke & Patterson, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Steven and Helen Solich, filed suit in the circuit court of Cook County to recover damages caused by the alleged negligence of the defendants, U.S. Steel Corporation and Portes Cancer Prevention Center, for failing to report to Steven Solich the findings of a chest X ray. Codefendant Portes filed a cross-claim against U.S. Steel for equitable apportionment. U.S. Steel and Portes now appeal from the jury's verdict for the Soliches and U.S. Steel further appeals from the jury's apportionment of the verdict, 99% to U.S. Steel and 1% to Portes.

Among numerous contentions, U.S. Steel argues that the exclusivity provisions of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) barred the Soliches' lawsuit. Portes claims that the Soliches' suit should have been dismissed based upon the medical malpractice statute of limitations, challenges the sufficiency of the evidence, and alleges other errors at trial.

Steven Solich became employed by U.S. Steel in 1948 as a millwright helper. In 1968, he was promoted to a foreman and subsequently became entitled to take advantage of the employee benefit of an optional yearly management physical paid for by U.S. Steel. The physical examinations were normally conducted at the plant's own medical clinic. However, in 1975, the clinic was understaffed and U.S. Steel contracted with the Portes Cancer Prevention Center to perform the physicals, which included various laboratory tests and a chest X ray. The results of the employee's physical were to be reported to U.S. Steel's medical director after the employee signed a release form authorizing Portes to do so. The employee could also have the results sent to his or her family physician or residence.

In 1975, Solich participated in the management physical program. U.S. Steel arranged for his physical to be conducted at Portes, Solich signed a release form, and the results were sent directly to U.S. Steel's medical director and were ultimately retained at U.S. Steel as part of Solich's permanent medical record. Solich's 1975 chest X ray results read: "chest X-ray, interpretation normal *** lungs, fibrosis." These results were not discussed with him.

Various experts testified at trial and presented conflicting opinions as to whether the finding of fibrosis in Solich's 1975 X ray was clinically significant. Solich had other management physicals in 1976 and 1977. His 1977 chest X ray indicated a finding of "increase in hilar markings." His 1982 management physical revealed the presence of silicosis in his lungs and he was referred by U.S. Steel to another physician at Northwestern University. Solich retired from U.S. Steel due to his lung condition in 1982.

Solich filed a claim under the Workers' Compensation Act for injuries allegedly sustained while he was employed at U.S. Steel, namely, hearing loss and pulmonary disease, including silicosis and asbestosis. In 1983, Solich settled with U.S. Steel for compensation for his injuries and the settlement was approved by the Industrial Commission. In 1984, Solich brought the action at issue against U.S. Steel and Portes, alleging that their failure to report to him the results of the 1975 X ray indicating fibrosis aggravated his lung condition which eventually resulted in silicosis. Helen Solich filed a separate claim for loss of consortium.

■ U.S. Steel contends that Solich's action was barred by the exclusive-remedy provision of the Worker's Compensation Act. The Act bars a common law action by an employee against his employer or co-employees "for injury or death sustained by any employee while engaged in the line of his duty as such employee." (Ill. Rev. Stat. 1981, ch. 48, par. 138.5(a).) To be compensable under the Act, the injuries sustained by the employee must be "arising out of and in the course of his employment." (Ill. Rev. Stat. 1981, ch. 48, par. 138.1(b)(2).) "Arising out of" refers to the causal connection between the employment and the injury. The causal connection is demonstrated if the claimant establishes that the injury's origin lies in some risk related to the employment. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 480, 548 N.E.2d 1033; *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 85, 481 N.E.2d 684; *Scheffler Greenhouses, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 361, 366, 362 N.E.2d 325.) " 'In the course of' employment" refers to the time, place, and circumstances under which the injury is received. (*Scheffler Greenhouses*, 66 Ill. 2d at 366-67, 362 N.E.2d at 327.) An injury will generally be found to arise "in the course of employment" when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and when he is fulfilling those duties or engaged in something incidental thereto. (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 278, 201 N.E.2d 434.) Each claim for compensation must be

determined on its own facts. *Campbell "66" Express, Inc. v. Industrial Comm'n* (1980), 83 Ill. 2d 353, 357, 415 N.E.2d 1043.

In the instant case, the injury complained of is the aggravation of Solich's work-related lung disease due to the failure of U.S. Steel and Portes to report to him the finding of fibrosis in his 1975 X ray. Solich argues that his injury did not arise out of his employment because his physical examination was entirely voluntary and was not a condition of employment.

Given the facts in this case, we cannot conclude that simply because Solich's physical was not mandatory, the injury did not arise out of his employment. The Illinois Supreme Court has addressed a very similar factual situation in *Unger v. Continental Assurance Co.* (1985), 107 Ill. 2d 79, 481 N.E.2d 684. The plaintiff in that case filed a medical malpractice action against a co-employee physician and his employers based on the physician's alleged failure to properly diagnose the plaintiff's nonwork-related lung cancer during an employer-sponsored physical. A factual dispute existed as to whether the physical was mandatory or voluntary. Even though the lung cancer was not work-related, the court found a sufficient causal nexus between the plaintiff's employment and the physician's failure to diagnose his lung cancer and concluded the injury arose out of his employment.

■■ We find the difference between the instant case and *Unger* with respect to the voluntariness of the physical to be irrelevant in establishing the requisite causal nexis. A sufficient causal connection was demonstrated between Solich's employment and U.S. Steel's failure to report the finding of fibrosis in his 1975 chest X ray. U.S. Steel provided the physicals for the benefit of the employment relationship. Solich was benefited by having his physical condition examined and U.S. Steel was benefited by ensuring the continued good health of its employees. U.S. Steel made the arrangements and paid for Solich's 1975 physical at the Portes Center. U.S. Steel's medical director reviewed the results of Solich's physical examinations and maintained his medical file at U.S. Steel's medical clinic. We, therefore, believe these facts amply demonstrate that Solich's injury arose out of his employment.

Solich further argues that the injury did not arise "in the course of employment" because the physical examination occurred at the Portes Center, where he was not in the performance of his duties and, because the physical was voluntary, he was not fulfilling his duties at the time. We believe that under the facts of this case, the alleged injury was sustained "in the course of employment."

The examination occurred in a clinic employed by U.S. Steel to conduct physicals for its employees. The examination was scheduled by U.S. Steel and took place during working hours. Further, U.S. Steel's alleged negligence occurred when the company's medical clinic physician failed to report the results of the 1975 X rays. The review of the X rays occurred during working hours on the company premises by a co-employee physician. We believe these facts are sufficient to prove that Solich's injury occurred in the course of his employment since Solich was fulfilling his duties at the time of the injury.

We, therefore, find that the Soliches' claims against U.S. Steel were barred by the exclusive-remedy provision of the Workers' Compensation Act. It is therefore unnecessary for this court to address the other issues which were raised by U.S. Steel on appeal.

We next address Portes' contention that the trial court erred in failing to dismiss the Soliches' negligence claim against Portes based upon the medical malpractice statute of limitations. (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) We first summarize the pertinent facts applicable to this issue. Portes is an Illinois not-for-profit corporation. Originally, Portes primarily educated the general public on the detection and treatment of cancer. Having received additional outside funding, Portes began to offer screening examinations for cancer and, ultimately, Portes provided general screening physical examinations. The examination consisted of a physical, various blood tests, a test for blood in the stool, basic respiratory function tests and a chest X ray. However, Portes did not diagnose or treat illnesses. Portes employed 12 staff physicians and two registered nurses, all of whom were licensed by the State of Illinois. Additionally, Portes employed State-certified medical assistants and laboratory technicians.

Upon completion of the physical, Portes did not interpret the chest X rays, but rather sent them to a board-certified radiologist at Henrotin Hospital. The radiologist completed a report indicating whether the X ray was normal or abnormal. Portes then sent the results of the physical examination, including the chest X-ray interpretation, to U.S. Steel.

■ Portes now contends that since the Soliches' suit was brought more than four years after the date of Solich's physical, the claim should have been dismissed under the medical malpractice statute of limitations. The statute provides:

"No action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed

under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew *** but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death ***." Ill. Rev. Stat. 1983, ch. 110, par. 13—212.

The parties agree that if the statute applies to Portes, the action would be barred because Solich's chest X ray was taken in 1975 and the suit was brought in 1984, more than four years after the date of the act alleged to have been the cause of Solich's injury.

Portes argues that it should have been protected under the statute. Solich argues that a not-for-profit corporation is not listed in the statute as one of the entities which is afforded the benefit of the statute. Solich further contends that Portes cannot be afforded the protection of the statute because it is not licensed under the Medical Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 1 *et seq.*) and, thus, does not practice medicine or provide patient care.

Our supreme court has discussed the intent of the medical statute of limitations in *Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 510 N.E.2d 883. The court noted that in light of the medical malpractice insurance problem, the legislature enacted the statute to ensure the continued availability of medical malpractice insurance to affected persons and institutions and to subsequently ensure the continuation of their health-care services. In *Penkava,* the court held that nurses were covered under the 1981 version of the statute despite the fact that they were not specifically named in the group of health-care providers who were covered. The court reasoned that it was inconceivable that the legislature intended to protect only physicians, dentists, and hospitals and leave nurses exposed to liability. The court stated that a hospital could only provide medical care through its medical personnel, which included nurses.

The statute has also been construed to apply to medical corporations. In *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783, the plaintiff's estate sued a radiology group, a medical corporation, for its failure to properly evaluate and report the results of a brain scan which allegedly resulted in the plaintiff's terminal brain cancer. The court held that the word "physician," as used in the medical malpractice statute of limitations, includes corporations formed to practice medicine under the Medical Corporations Act. The court reasoned that the intent of the statute would be to afford

the same protection to a group of physicians who were organized as a medical corporation as that afforded to a single physician.

■ We believe that Portes should also have been afforded the protection of the statute and thus the Soliches' claim was barred by the four-year statute of limitations. As the above-mentioned cases explain, the intent of the statute is to afford protection to medical professionals. While Portes is not a medical corporation that is licensed under the Medical Corporation Act, the reasoning is the same. All of the Portes employees are medical professionals who are licensed to practice in this State. The fact that Portes is a not-for-profit corporation is not a relevant distinction. A not-for-profit corporation is licensed in this State and thus fulfills the statute's requirement of being "duly licensed under the laws of this State."

Further, the statute provides that the statute of limitations applies to actions "arising out of patient care." Clearly, the Soliches' suit falls under the penumbra of "patient care." The essence of the Soliches' claim is that Portes failed to report a clinically significant result, the finding of fibrosis in his 1975 chest X ray. The Soliches cannot claim that Portes had a duty to conclude that Solich's X-ray finding of fibrosis was clinically significant and a duty to report the finding to him, and at the same time claim that Portes did not provide patient care. The evaluation of Solich's chest X ray required the expertise of medical professionals, most likely the physicians employed by Portes. These physicians, much like the physicians who were organized into a medical corporation in *Real v. Kim*, were covered by the statute.

We therefore find that the trial court erred by failing to dismiss the Soliches' suit against Portes as it was barred by the medical malpractice statute of limitations and we subsequently need not address Portes' other contentions.

For all of the aforementioned reasons, we reverse the judgment of the trial court against both U.S. Steel and Portes.

Reversed.

JOHNSON, J., concurs.

JUSTICE McMORROW, dissenting:

Because I am unable to agree with the majority's holding with regard to Portes Cancer Center, I respectfully dissent. The majority determines that plaintiff's negligence claim against Portes Cancer Center is governed by a four-year medical malpractice statute of re-

pose that applies to actions against physicians, dentists, registered nurses, or hospitals. (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) However, by its plain terms, this statute does not apply to the Center, which is neither a physician, dentist, registered nurse, nor a hospital. The majority's disposition effectively rewrites the statute to include an entity which the Illinois General Assembly did not intend to be governed by the legislation. I am unable to concur in the majority's impermissible amendment, by judicial decision, of a clear and unambiguous provision enacted by our legislature.

The cardinal rule of statutory interpretation is to determine and give effect to the legislature's intent according to the plain and unambiguous meaning of the language used in the statute. (*Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 194-95, 595 N.E.2d 561.) The role of the court is to interpret the statute, not to amend it. "A court is not free to rewrite legislation, or to ignore an express requirement contained in a statute" (*People v. Palmer* (1992), 148 Ill. 2d 70, 88, 592 N.E.2d 940), and the court may not modify the plain terms of a statute by the use of "subtle construction." *Palmer*, 148 Ill. 2d at 85.

Based upon a statutory construction that gives effect to the plain terms of the provision, Portes Cancer Center does not fall within the limited scope of the medical malpractice statute of repose. The pertinent provision setting forth the medical malpractice statute of repose bars an action in tort that "arise[s] out of patient care" if the suit is not filed within four years after the date on which the allegedly tortious acts occurred. (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) This statute of repose is specifically designated to apply to suits brought "for damages for injury or death against *any physician, dentist, registered nurse or hospital* duly licensed under the laws of this State." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) By its express, clear, and unambiguous terms, the statute does not apply to other types of health care professionals that may also provide medical services. Since the Portes Cancer Center is neither a physician, dentist, nurse nor a hospital, it is not protected by the statute, and plaintiff's claim against the Portes Cancer Center should not be barred.

In *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, the Illinois Supreme Court specifically endorsed and adopted a restrictive interpretation of the scope of the medical malpractice statute of repose, at issue in the case at bar. The court observed that the "General Assembly in responding to the medical malpractice insurance crisis drew the statute very narrowly and encompassed

within the classification to whom the statute applied only those segments of the health-care providers most acutely affected by the crisis." (79 Ill. 2d at 319.) The court noted that "there is a wide variance as to the classes of health care providers who are covered by the statutes" adopted in other States. (79 Ill. 2d at 310.) The supreme court further noted that the statute in Illinois "falls within the group which does not extend the protection of the statute to all classes of health-care providers who could be the subject of medical malpractice actions." (79 Ill. 2d at 310.) The court specifically determined that "[p]rotection is afforded by our statute only to *physicians and hospitals.*" (Emphasis in original.) 79 Ill. 2d at 310.

Subsequent to the supreme court's decision in *Anderson,* the Illinois legislature enacted statutory amendments that extended the protection of the statute to nurses and dentists. (See Pub. Act 83—235, eff. Sept. 8, 1983 (registered nurse); Pub. Act 82—783, eff. July 13, 1982 (dentist).) However, although cognizant of other health care providers and on notice of the restricted interpretation given by our Illinois Supreme Court to the statute, our General Assembly has chosen not to further amend the statute to provide protection to additional classes, or providers such as Portes, within the health care field. When "a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation. [Citations.]" (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 442, 593 N.E.2d 522.) Because the medical malpractice statute of repose specifies the particular health care providers to which it applies, and because the legislature had not seen fit to amend the statute to include additional health care providers beyond those already specified in the statute, it is reasonable to conclude that medical providers such as the Portes Cancer Center are not governed by the four-year statute of repose.

Notwithstanding the plain language of the statute and the history of its enactment and amendments by the legislature, the majority concludes that Portes Cancer Center should be governed by the statute. I cannot concur in this determination. It is not the proper role or function of this court, on review of the trial court's judgment, to judicially amend the statute to include an entity that is not specified therein. Whether it would be more logical or fair to include all health care professionals, including the Center, within *the scope of the statute is not a matter of judicial concern.* Rather, it is a question that should be addressed to the Illinois General Assembly.

The statute at issue here represents "a reasonable attempt to remedy what the legislature perceived to be a medical malpractice insurance crisis." (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 316, 402 N.E.2d 560.) "Whether the course [chosen by the legislature] was wise or the best means of accomplishing the result desired is a matter for legislative determination." (*Anderson*, 79 Ill. 2d at 316.) Because the majority's disposition is in clear conflict with the legislature's intention in the current medical malpractice statute of repose, I cannot concur in the majority's holding in the present case.

I also do not believe the majority's decision is justified by *Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 510 N.E.2d 883, or *Real v. Kim* (1983), 112 Ill. App. 3d 427, 445 N.E.2d 783. The nurses in *Penkava* were deemed to be included within the term "hospital" because the nurses were employed by the hospitals and were essential to the hospitals' provision of medical care. (See *Penkava*, 117 Ill. 2d at 156-57.) In the present case, the Portes Cancer Center is not an employee of any physician or hospital, and there is nothing in the record before us to indicate that the Center is "essential" to a physician or hospital in the provision of medical services. Also, in *Real* the medical corporation was an entity licensed under the Medical Corporation Act to provide medical care. (See *Real*, 112 Ill. App. 3d at 436-37.) In the case at bar, the Portes Cancer Center is not licensed under the Medical Corporation Act. Moreover, as it appears from the evidence presented at trial, the Center did not provide medical care but merely arranged and coordinated tests and examinations, and forwarded the medical results, without interpretation, to the appropriate physicians. As the majority notes, Portes did not diagnose or treat illnesses. Portes was not a doctor, and Solich was not Portes' patient.

The legislature had a rational basis for amending the statute to include nurses and dentists. (See *Penkava*, 117 Ill. 2d at 157.) In my opinion, the majority is in error when it reads into the statute a classification clearly not included and, importantly, for which there is no basis for inclusion.

For these reasons, I respectfully dissent.