STEVEN SOLICH *et al.*, Plaintiffs-Appellees, v. GEORGE AND ANNA PORTES CANCER PREVENTION CENTER OF CHICAGO, INC., *et al.*, Defendants-Appellants (George and Anna Portes Cancer Prevention Center of Chicago, Inc., Plaintiff and Cross-Appellee; United States Steel Corporation, Defendant and Cross-Appellant).

First District (4th Division)   No. 1—91—0323

Opinion filed June 29, 1995.—Rehearing denied July 28, 1995.

French, Kezelis & Kominiarek, P.C., of Chicago (James M. Hofert, Russell P. Veldenz, and Daniel C. Hofert, of counsel), for appellant George and Anna Portes Cancer Prevention Center of Chicago, Inc.

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (John K. Hughes, Luanne Ellison, and Jonathan A. Rothstein, of counsel), for appellant United States Steel Corporation.

Robert B. Patterson and Danielle M. Jaeschke, both of Drumke & Patterson, Ltd., of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

On remand from the Illinois Supreme Court, this case involves claims for negligence and loss of consortium for the aggravation of Steven Solich's silicosis caused by George and Anna Portes Cancer Prevention Center's (Portes') alleged failure to report clinically significant results of a chest X ray in 1975. We also must address a cross-claim by Portes against United States Steel (U.S. Steel) for equitable apportionment due to U.S. Steel's alleged negligence in failing to report X ray results to Solich in 1976 and 1977. In a previous opinion, we reversed a judgment for the plaintiffs holding that the Soliches' direct action against U.S. Steel for its negligence in 1975 was barred by the exclusivity provision of the Workers' Compensation Act. (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) We also held that section 13—212 of the Illinois Code of Civil Procedure barred the Soliches' claims against Portes. (See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1992), 238 Ill. App.

3d 741, 606 N.E.2d 572, *rev'd* (1994), 158 Ill. 2d 76, 630 N.E.2d 820; Ill. Rev. Stat. 1981, ch. 110, par. 13—212.) The Soliches then petitioned the Illinois Supreme Court for review of our disposition as to Portes only. The supreme court reversed, holding that the claims against Portes were not time barred by section 13—212. (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 630 N.E.2d 820.) The supreme court remanded the action to this court so that we may reach other potentially dispositive issues previously not addressed.

The facts of this case are contained in two earlier opinions; therefore, we will provide only a brief background. (See *Solich*, 158 Ill. 2d 76, 630 N.E.2d 820; *Solich*, 238 Ill. App. 3d 741, 606 N.E.2d 572.) In 1948, Mr. Solich became a millwright helper at U.S. Steel. In 1968, he was promoted to foreman, which entitled him to an annual physical exam at the expense of U.S. Steel. Although the physicals were usually conducted at the U.S. Steel clinic, understaffing in 1975 prompted U.S. Steel to contract with Portes to perform employee physicals.

In 1975, Mr. Solich contacted U.S. Steel for a physical, which in turn arranged for the exam to be conducted at Portes. He signed a release which provided that the results of the exam would be sent directly to U.S. Steel's medical director and retained as part of Mr. Solich's permanent medical record.

The results of Mr. Solich's chest X ray read as follows: "chest X-ray, interpretation normal *** lungs, fibrosis." Neither Portes nor U.S. Steel notified Mr. Solich of the 1975 X-ray results, nor did they inform him that the records could be released to him directly. Mr. Solich continued to work at U.S. Steel until 1982 when he retired.

Mr. Solich was diagnosed with silicosis in 1982. In 1983, he settled with U.S. Steel for compensation for his injuries incurred while on the job. His compensated injuries included hearing loss, silicosis and asbestosis. Mr. Solich then brought an action against both U.S. Steel and Portes for the aggravation of his silicosis in 1975 because they failed to communicate the results of his chest X ray directly to him, and failed to arrange an adequate agreement with one another concerning reporting procedures. Mr. Solich's wife, Helen Solich, brought a derivative action for loss of consortium.

At trial, Mr. Solich maintained that if he had been informed of the fibrosis shown on the 1975 X ray, he would have removed himself from the environment at U.S. Steel. He alleged that, instead, he remained in U.S. Steel's dust-filled work environment for seven more years, which aggravated his silicosis.

The plaintiffs did not deny that silicosis is a progressive disease. Rather, their theory at trial was that the silicosis would not have progressed as quickly or substantially if Mr. Solich was removed from his work environment at U.S. Steel in 1975.

In turn, Portes filed a cross-claim against U.S. Steel for equitable apportionment alleging that U.S. Steel was liable for failing to report unfavorable X-ray results to Mr. Solich in 1976 and 1977. Portes maintains that U.S. Steel's negligent acts constituted subsequent, divisible injuries in further aggravation of Mr. Solich's silicosis.

The jury found in favor of the Soliches and against both defendants, entering a lump-sum verdict of $2,096,729.50 for Mr. Solich, and $350,000 for Mrs. Solich. By special interrogatory the jury determined that X rays from 1976 and 1977 showed clinically significant abnormalities. The jury found in favor of Portes on its cross-claim against U.S. Steel and apportioned liability at 1% as to Portes and 99% as to U.S. Steel.

The circuit court entered judgment on the verdict and denied the defendants' post-trial motions. Both parties appealed. During the appeal process, Mr. Solich died and Mrs. Solich was appointed special administrator and substituted as representative of his estate.

The issues which warrant our consideration at this juncture are (1) whether a judgment notwithstanding the verdict should have been entered in favor of Portes, (2) whether Portes' claim against U.S. Steel for equitable apportionment applies to this action or, alternatively, whether U.S. Steel is entitled to a judgment notwithstanding the verdict, (3) whether Portes' recovery on its cross-claim, if valid, is limited by the Illinois Supreme Court's decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, (4) whether the jury instructions, taken as a whole, clearly misled the jury and resulted in prejudice to the defendants, (5) whether the trial court erred in refusing instructions which clearly define the injury at issue in this case, and (6) whether the cumulative effects of the trial errors deprived the defendants of a fair trial.

■ First, Portes requests that we enter a judgment notwithstanding the verdict in its favor. A judgment notwithstanding the verdict should be entered only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Upon reviewing the record at length and considering all of the circumstances of the present case, it cannot be said that all of the evidence, when viewed in a light most favorable to the plaintiffs, so overwhelmingly favors Portes that no

verdict in their favor could ever stand. Therefore, we decline to enter a judgment notwithstanding the verdict against the plaintiffs.

On remand, Portes also argues that we should enter a judgment notwithstanding the verdict in its favor because it did not owe a legal duty to the Soliches. Portes maintains that this is not a medical malpractice action, but rather the Soliches' theory is negligence due to an administrative lapse. Portes further suggests that we can infer the absence of a legal duty from the Illinois Supreme Court's previous opinion in this case which held that section 13—212 of the Illinois Code of Civil Procedure, the statute of repose for certain medical malpractice actions, did not apply to Portes. *Solich*, 158 Ill. 2d 76, 630 N.E.2d 820.

We find that Portes' analysis is not sound and that it has drawn an erroneous inference from the supreme court's opinion. In *Solich*, our supreme court held that the Soliches' action against Portes was not barred by section 13—212 of the Illinois Code of Civil Procedure because Portes did not fall into one of the categories of health-care providers which are specifically enumerated in the statute, namely, physicians, dentists, registered nurses and hospitals. Moreover, it does not follow that if a health-care institution is not protected by the statute of limitations provision enacted by the legislature, then it is not capable of committing malpractice. For guidance on this point, we turn to the Illinois Supreme Court's opinion in *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560.

In *Anderson*, the court upheld the constitutionality of the 1976 version of section 13—212 which then applied to physicians and hospitals only. The court noted that the General Assembly enacted the statute in response to a "medical malpractice insurance crisis." (*Anderson*, 79 Ill. 2d at 301, 402 N.E.2d at 562.) The court observed that compared with other jurisdictions, the Illinois version of the statute of limitations was very narrow and did not "extend the protection of the statute to all classes of health-care providers who could be the subject of medical malpractice actions." (*Anderson*, 79 Ill. 2d at 310, 402 N.E.2d at 567.) The court held that there was a reasonable basis for differentiating between physicians and hospitals and the general class of health-care providers, in part, because they accounted for 95% of all malpractice claims. *Anderson*, 79 Ill. 2d at 318-19, 402 N.E.2d at 571.

Given the court's analysis in *Anderson*, we cannot say that Portes, a health-care institution engaged in providing medical examinations for the early detection of cancer, is incapable of committing medical malpractice. Here, as the trial court correctly recognized, this case is somewhat of a "hybrid" because it arises in the context of a medical

examination for the early detection of cancer, while the allegations and jury instructions state that Portes was negligent in failing to report clinically significant test results to Mr. Solich.

Specifically, the plaintiffs were compelled to prove their case through expert testimony in order to show whether the X ray at issue contained a clinically significant abnormality. Also, the trial court issued the medical malpractice issues instruction defining the standard of care. For these reasons, we find that Portes' argument that it did not owe a legal duty to the Soliches is without merit.

Before reaching the alleged trial errors raised by the parties, we must resolve the issue of whether Portes stated a cause of action against U.S. Steel or, alternatively, whether U.S. Steel is entitled to a judgment notwithstanding the verdict as to Portes' cross-claim. We are faced with a judgment and verdict following a trial in which U.S. Steel was improperly named as a direct defendant. Therefore, our assessment of the alleged trial errors necessarily depends on whether U.S. Steel was properly named as a third-party defendant. If so, we must determine whether both Portes and U.S. Steel were prejudiced by any of the alleged trial errors, such that they were deprived of a fair trial.

The parties agree that the cause of action in this case arose before March 1, 1978. Therefore, neither the Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1991, ch. 70, par. 301 *et seq.*) nor the judicial adoption of contribution in Illinois (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437) applies. (See *Illinois Central Gulf R.R. v. American President Lines, Inc.* (1987), 161 Ill. App. 3d 733, 515 N.E.2d 242.) Prior to the acceptance of contribution in Illinois, the Illinois Supreme Court recognized equitable apportionment or equitable indemnity as a means of alleviating the harsh results of the rule prohibiting contribution among joint tortfeasors. See *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 495 N.E.2d 496; *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40, *rev'd on other grounds* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.

On appeal, U.S. Steel claims that equitable apportionment does not apply to this case or, alternatively, that we must enter a judgment notwithstanding the verdict. Additionally, U.S. Steel argues that if we determine that equitable apportionment is a viable cause of action in this case, then its liability to Portes is limited to the amount of workers' compensation that it paid to Mr. Solich.

■ The doctrine of equitable apportionment requires that: (1) the original tortfeasor is liable at law for the subsequent negligence of the subsequent tortfeasor, *i.e.,* that the two tortfeasors are not joint tortfeasors, (2) that the two tortfeasors did not act in concert, (3) that

the wrongful conduct by each tortfeasor and the injuries sustained occurred at different times, and (4) that the original tortfeasor lacked control over the acts of the subsequent tortfeasor or had no opportunity to protect itself against the negligence of the second tortfeasor. (*Gertz*, 55 Ill. 2d 84, 302 N.E.2d 40.) The doctrine applies only where the defendants have committed independent and successive torts. (*Batteast v. St. Bernard's Hospital* (1985), 134 Ill. App. 3d 843, 480 N.E.2d 1304.) The test for jointness is the indivisibility of the injury. *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522.

The plaintiffs sought recovery for the aggravation of Mr. Solich's silicosis from 1975 to 1982 as a result of both defendants' negligence in failing to report X-ray results in 1975. Portes based its counterclaim for equitable apportionment on U.S. Steel's failure to advise Mr. Solich of the results of additional X rays in 1976 and 1977. Portes' theory is that if U.S. Steel had properly communicated the results of the X rays taken in 1976 and 1977, then Mr. Solich's injury—the aggravation of his silicosis—may not have been as severe or disabling by 1982. U.S. Steel maintains that Portes is unable to state a claim which satisfies all four prongs of the doctrine of equitable apportionment. Specifically, it contends that Portes failed to establish the divisibility of the injury.

■ We reject U.S. Steel's arguments and find that our decision in *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359, supports a holding that, as a matter of law, Portes has stated a cause of action for equitable apportionment. In *Harris*, the plaintiffs brought an action against two doctors and a hospital for a failure to properly diagnose and treat a child for spinal meningitis. One of the defendants, Dr. Ali, and the hospital filed a counterclaim against the other defendant, Dr. Feinberg, for equitable apportionment. The counterplaintiffs sought indemnification for that portion of any judgment returned against Dr. Ali and the hospital attributable to Dr. Feinberg's subsequent malpractice.

The court in *Harris* held that the counterplaintiffs stated a cause of action against Dr. Feinberg, reasoning that the child's injuries might not have been as serious if Feinberg had not been guilty of malpractice. Further, the court determined that Ali was liable for all of the damages incurred by the patient, not just those caused by his own misconduct. Finally, it was clear from the record that the defendants' negligent acts occurred at different times and that Dr. Ali did not have control over, or act in concert with, Dr. Feinberg.

Similarly, here Portes may be held liable for the entirety of the plaintiff's injury. (See *Alberstett v. Country Mutual Insurance Co.*

(1979), 79 Ill. App. 3d 407, 398 N.E.2d 611.) It is foreseeable that Mr. Solich, unaware of any unfavorable test results in 1975, would not remove himself from the allegedly harmful work environment, thus possibly aggravating the progression of his silicosis. Just as the second doctor's failure to diagnose in *Harris* constituted a separate, divisible injury which may have affected the seriousness and extent of his patient's injuries, U.S. Steel's failures to report clinically significant X-ray results in 1976 and 1977 were separate, divisible injuries.

Further, Portes did not act in concert with U.S. Steel in 1976 and 1977. Also, the record shows and the parties agree that the "injuries"—aggravation of silicosis—occurred at different points in time. Finally, Portes cannot be said to have had control over the actions of U.S. Steel physicians in failing to report the results of Mr. Solich's X rays in 1976 and 1977. (See *Harris*, 100 Ill. App. 3d 1, 425 N.E.2d 1359; *Alberstett*, 79 Ill. App. 3d 407, 398 N.E.2d 611.) Arguably, the aggravation of Mr. Solich's silicosis might have been prevented, or at least lessened, if U.S. Steel had not been negligent in failing to communicate the results of X rays taken in 1976 and 1977.

Therefore, given all of the facts and circumstances of this case, we conclude that Portes stated a cause of action for equitable apportionment against U.S. Steel. Also, upon reviewing the record, we cannot say that when viewed in a light most favorable to Portes, the evidence so overwhelmingly favors U.S. Steel that no verdict in favor of Portes for equitable apportionment could ever stand.

■ U.S. Steel further argues that if we find that equitable apportionment applies here, then its liability for equitable apportionment is limited to the amount of workers' compensation that it paid to Mr. Solich because of the Illinois Supreme Court's decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023. The issue in *Kotecki* concerned the interplay between the Contribution Act and the Workers' Compensation Act. Although we are presented with a claim for equitable apportionment, not contribution, we find the rationale of *Kotecki* controlling.

We reject Portes' argument that the court in *Kotecki* implicitly ruled that its decision would have no effect on the common law remedies available against a plaintiff's employer. We recognize, as Portes argues, that there are some theoretical differences between the Contribution Act and the common law claim for equitable apportionment. However, we also note that the Contribution Act "encourages the equitable apportionment of damages by allowing for a right of contribution among joint tortfeasors when one tortfeasor pays more than his *pro rata* share of common liability." (See *In re Guardianship of Babb* (1994), 162 Ill. 2d 153, 171, 642 N.E.2d 1195, 1203; Ill. Rev.

Stat. 1991, ch. 70, par. 302(b).) Therefore, Portes' emphasis on the differences between the theories is overemphasized and irrelevant to the present discussion.

The relevant aspect of *Kotecki* in relation to the present case is the court's analysis of the need to balance the policies of the Workers' Compensation Act when recovery is sought against an employer in a third-party action. The court in *Kotecki* recognized the tension between the policy of apportioning the cost of negligent conduct according to the percentage of fault, and the policies underlying the system of employee recovery contemplated by the Workers' Compensation Act. In *Kotecki*, the court stated:

> "The language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. These limited benefits are paid in exchange for a no-fault system of recovery." *Kotecki*, 146 Ill. 2d at 165, 585 N.E.2d at 1028.

Additionally, the Illinois Supreme Court in *Lannom v. Kosco* (1994), 158 Ill. 2d 535, 634 N.E.2d 1097, held that *Kotecki* applied retroactively to all cases pending at the time the decision was announced. The parameters of the word "pending" include cases on direct review in the appellate court at the time *Kotecki* was decided. (*Moore v. Centreville Township Hospital* (1994), 158 Ill. 2d 543, 547, 634 N.E.2d 1102.) Therefore, although *Kotecki* does not directly address the effect of the Workers' Compensation Act on the common law action of equitable indemnity, the court's pronouncement concerning the goals of the Workers' Compensation Act is controlling. Consequently, U.S. Steel may not be held liable to Portes for any amount exceeding its liability to Mr. Solich under the Workers' Compensation Act.

We now turn to the pivotal issue in this case: whether the defendants were prejudiced by trial errors thereby depriving them of a fair trial and requiring a new trial. Both Portes and U.S. Steel raise several issues concerning alleged trial errors, arguing that a new trial is warranted. Additionally, Portes claims that the verdict is excessive. For the reasons which follow, we conclude that the cumulative effect of pretrial and trial errors requires a new trial for all parties.

■ Pursuant to Supreme Court Rule 366, we are charged with a responsibility to ensure that a cause had a just result. (*Bank of Homewood v. Chapman* (1993), 257 Ill. App. 3d 337, 628 N.E.2d 974; 134 Ill. 2d R. 366.) We need not determine whether the record is totally free from error. Rather, we must determine whether any error occurred which prejudiced the appellants or affected the outcome of the trial.

(*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) Where a case is close on the facts, and a jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal. *Quigley v. Snoddy* (1968), 102 Ill. App. 2d 232, 242 N.E.2d 775.

The parties have raised various challenges to the jury instructions. We will discuss the instructions that we have found to be ambiguous and misleading. We also consider the related argument that the court erred by refusing to instruct the jury that the plaintiff was seeking recovery for the aggravation of an injury, not for the original injury.

■ "Jury instructions are intended to be a comprehensive and accurate statement of the law applicable to the case so as to guide the jury in making its determinations." (*Palmer v. Mount Vernon Township High School District 201* (1995), 269 Ill. App. 3d 1056, 1065, 647 N.E.2d 1043, 1050.) An error in instruction does not require a reversal unless it misleads the jury. (*Esser v. McIntyre* (1994), 267 Ill. App. 3d 611, 642 N.E.2d 803; *King v. Casad* (1984), 122 Ill. App. 3d 566, 461 N.E.2d 685.) When evaluating the propriety of given jury instructions, the reviewing court must view the instructions as a whole. *Thompson v. MCA Distributing, Music Corp. of America* (1994), 257 Ill. App. 3d 988, 629 N.E.2d 206.

"The test for determining whether jury instructions are proper is whether they form a clear and adequate picture of the applicable law when viewed in their entirety." (*Swartz v. Sears, Roebuck & Co.* (1993), 264 Ill. App. 3d 254, 266, 636 N.E.2d 642, 650.) Further, a new trial will be granted where a party shows that its right to a fair trial has been seriously prejudiced by the denial of an instruction. *Wade v. City of Chicago Heights* (1991), 216 Ill. App. 3d 418, 575 N.E.2d 1288; see generally *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282.

■ In light of the foregoing principles, we examine the instructions given in the present case, as well as the propriety of the court's decision to refuse certain instructions. First, plaintiffs' instruction No. 17, the issues instruction, is misleading in several respects. Part of the instruction reads, "[t]he plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries." The word "injuries" is also used in another paragraph of the instruction. The trial court gave this instruction over an objection that the word "injuries" is misleading and confusing because the jury is not clearly told that the injury here is aggravation.

Plaintiffs' instruction No. 20 also includes the words "injured" and "injury" with no further explanation. At trial, the defendants

argued that the instruction should have read that Mr. Solich "sustained an aggravation of a prior condition." We also note that plaintiffs' instruction No. 22, the damages instruction, uses the word "injury" or "injuries" three times without explanation.

The defendants objected to these instructions at trial arguing that the true injury at issue, the aggravation, was obscured. Given the circumstances of the case, we agree and find that these instructions served to confuse the jury. The critical concern here is that the instructions permitted the jury to hold U.S. Steel, and in turn Portes, liable for Mr. Solich's silicosis, a previously compensated injury. The error with respect to Portes is particularly prejudicial given the posture of this case.

■ Further, we determine that the trial court erred when it refused to instruct the jury that Mr. Solich was not seeking recovery for the silicosis existing in 1975, but rather for the accelerated progression of the silicosis from 1975 to 1982. The tendered instructions indicated that recovery was sought for the aggravation of silicosis, and not merely an "injury." The prejudice caused by the court's failure to give these instructions was exacerbated by the ambiguous references to Mr. Solich's "injury" or "injuries" throughout the instructions.

■ Additionally, we find that the extent of Mr. Solich's testimony concerning his exposure to silica dust at U.S. Steel prior to 1975 served to prejudice the defendants. At trial, Mr. Solich gave extensive descriptions of his jobs at U.S. Steel from 1948 until he retired in 1982. His testimony included explanations of the steel-making process and descriptions of the dust and smoke that were produced during this process. He also testified, more than once, that he inhaled dust and smoke all day long. There are numerous references to smoke and dust throughout his testimony, including references about the plant conditions prior to 1975.

Although we recognize that some testimony concerning plant conditions was relevant to place Mr. Solich's injury in context, the aggregate of the testimony given concerning the pre-1975 conditions at the plant, when combined with the instruction errors, only served to prejudice and confuse the jury about the issues in the case. The errors concerning the instructions, when coupled with Mr. Solich's extensive testimony concerning pre-1975 plant exposures to various types of toxic dust, an injury for which he had been compensated in 1983, compel a new trial.

■ We further conclude that it was error for the trial court to give plaintiffs' instruction No. 27 as written. Plaintiffs' instruction No. 27 refers to the average life expectancy of a 63-year-old individ-

ual. This instruction enabled the jury to arrive at the conclusion that Mr. Solich's damages may be calculated according to the "average" life expectancy of an individual, when in fact Mr. Solich suffered from an injury—silicosis—which was not at issue. Taken with the other instructions, this instruction allowed the jury to conclude that it could award Mr. Solich damages based on his decreased life expectancy from the silicosis itself.

Also, defendant's instruction No. 15 served to further confuse the jury concerning the injury at issue with respect to U.S. Steel. The instruction reads:

"You must fill in a percentage for each party. If you find in favor of Portes Cancer Center and against U.S. Steel, you must allocate percentages of damages between them."

This instruction fails to identify the years at issue. In this case, where the apportionment of liability so heavily depends on the particular year at issue, it was crucial for the instructions on this point to be unambiguous.

Finally, plaintiffs' instruction No. 17 contains two paragraphs which instruct the jury that U.S. Steel may be held liable for its negligence in 1975. As we now know, the trial court's pretrial ruling which allowed U.S. Steel to be named and tried as a direct defendant was error. Plaintiffs' instruction No. 17 served to prejudice U.S. Steel in that the plaintiffs were permitted to present an erroneous theory of the case against it.

A new trial should be awarded if a case is tried under an erroneous theory of law. (*Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.* (1993), 251 Ill. App. 3d 17, 29-30, 620 N.E.2d 1349, 1357, *aff'd* (1994), 162 Ill. 2d 99, 642 N.E.2d 470; *Woolsey v. Rupel* (1957), 13 Ill. App. 2d 48, 140 N.E.2d 855.) The trial court in this case erroneously ruled that the plaintiffs' claim against U.S. Steel was not barred by the exclusivity provision of the Workers' Compensation Act. The case proceeded to trial with U.S. Steel named as a direct defendant. The error of this decision as to U.S. Steel ultimately resulted in prejudice to Portes. The plaintiffs' opening statement, testimony and closing argument were all directed at proving both U.S. Steel and Portes liable for negligence in 1975. Further, the instructions did not accurately reflect the plaintiffs' theory of the case which served to taint the entire trial and prejudice the jury. See generally *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265.

Where it is impossible to separate more than one defendant as to the prejudice caused in the minds of the jury, justice requires a new trial as to all. (*Meldoc Properties v. Prezell* (1987), 158 Ill. App. 3d 212, 511 N.E.2d 861; *Bisset v. Village of Lemont* (1983), 119 Ill.

App. 3d 863, 457 N.E.2d 138.) Here, it is impossible to separate the prejudice that occurred in the minds of the jurors with respect to allowing the improper presentation of a direct action by the Soliches against U.S. Steel. This error, in addition to the prejudicial error caused by the ambiguous jury instructions, the refusal to give U.S. Steel's requested instructions and Mr. Solich's extensive testimony concerning his exposure to silica dust prior to 1975, demonstrates that the defendants did not receive a fair trial. The interests of justice require that this case be reversed and remanded for a new trial. Not only was the presence of U.S. Steel as a direct defendant improper, but its presence so tainted the presentation of the case to the jury that a new trial is warranted.

We have reviewed all of the instructions and find that the trial court erred in giving plaintiffs' instructions Nos. 17, 20, 22 and 27 because they were so misleading that both defendants were denied a fair trial. Overall, the jury instructions, as given, presented the jury with an obscure puzzle in need of a solution, rather than a clear and complete statement of the law. (See generally *Peoples Bank v. Damera* (1991), 220 Ill. App. 3d 1031, 581 N.E.2d 426.) The instructions impermissibly and prejudicially skewed the jury's view of the injury for which the parties could be held liable, namely, the aggravation of Mr. Solich's silicosis, not the disease itself.

As a final point, the plaintiff correctly notes, Portes' argument that it is merely severally liable under section 2—1117 of the Illinois Code of Civil Procedure fails because the Soliches' cause of action accrued before November 25, 1986, the effective date of the statute. (See *Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533, 563 N.E.2d 410.) Therefore, we hold that Portes is jointly and severally liable for any judgment that may result from a subsequent trial.

Reversed and remanded for a new trial.

CAHILL and S. O'BRIEN, JJ., concur.